No. 160.—CHARLES B. SISSON and others, plaintiffs in error,. *vs.* JOHN R. MATTHEWS and others, defendants in error.

[1.] To enable the creditors of a corporation to make out such a case of fraud against the members of the corporation as will render the members liable to the creditors, the creditors must show that they became creditors of the corporation induced by something said or done by the members, amounting to the perpetration of a deceit on the creditors.

In Equity, in Habersham Superior Court. Decided by Judge JACKSON, October Term, 1856.

This case is reported in 17 *Ga. Rep. p.* 544, where the facts of the original bill are set forth.

After that decision, the plaintiffs moved to amend **their** bill by charging that the re-payment to the said associates **of** the $2.000 previously advanced by them, as well as **the** payment of the $4.000 of indebtedness of said unincorporated company, were both done, and the payments made after the acceptance of the charter, and out of the funds **of** the *corporation* ; and furthermore, that the indebtedness **of** said corporation constantly increased, from the time **they** were incorporated until they finally abandoned the business.

This motion to amend was refused by the Court and the **bill** dismissed, and complainants except to this decision.

Cobb & Hull; Stanford, for plaintiffs in error.

T. R. R. Cobb, for defendants.

*By the Court.*—Benning, J. delivering the opinion.

[1.] Ought the amendment to have been allowed?  **It** ought, if the allowing of it would have made the case of the plaintiffs a case entitling them to the relief for which they prayed.

Let us consider the case, therefore, as though the matter of the amendment made a part of the bill.   So considering the case, the question will be, whether the bill would contain any equity?

The plaintiffs are creditors of a corporation—"The Habersham Iron Works & Manufacturing Company"; the corporation is insolvent; the defendants are the persons who were the members of the corporation at its commencement; the plaintiffs seek, from those persons, satisfaction of the demands which they hold against the corporation; and they do so on three grounds.

These are as follows :

1. They say that before the commencement of the existence of the corporation, the persons who afterwards became the

members of the corporation, and of whom the defendants are a part, were a joint stock company owning three thousand five hundred acres of land that had on it an iron foundry, forges, saw and grist-mills, &c. and that had cost them $20.000; that they agreed to consider this property as consisting of two hundred shares or parts, each of the value of one hundred dollars, and then divided out the shares among themselves in certain proportions; that they then collected from themselves $2.000, by a ten per cent. assessment on the estimated value of the shares, and applied the money to the improvement of the property; and that *after* the corporation came into existence, the corporation paid back to the members of the company this sum of two thousand dollars.

2. The plaintiffs also say that this joint stock company, before it was converted into a corporation, went in debt to various persons to the amount of $4.000 or other large sum, in putting improvements on the property, and that after it was converted into a corporation, the corporation paid off this debt.

3. The plaintiffs lastly say, that the members of this joint stock company, in their application to the Legislature for a charter, "represented to the said Legislature their capital, means and property as follows, viz: 'whereas a company has been formed for the purpose of establishing extensive manufactures of various kinds, in the County of Habersham, in this State, and especially for the purpose of smelting and working of iron, making castings, nails and bar iron; and have, for these purposes, purchased an extensive body of land and water power in that county, and have now a large foundry and other machinery in actual operation, and have asked to be incorporated with such privileges as may enable them to increase their means and to extend their operations, not only in the various manufactures of iron, but to those of cotton, wool, hemp, flax and other articles essentially useful and necessary.'" And the plaintiffs say that so much of this representation as stated that said company had "a large foundry in actual operation," was false; and they "charge" as follows: "that it required the sum of two thousand dollars,

or some other large amount of money, to put the said foundry in actual operation, and which necessary sum nor any part thereof was ever paid into the coffers of said company; and though said foundry was afterwards put " in actual operation," the same was done by the proceeds of credit obtained from your orators, or other creditors at present unknown to your orators."

The plaintiffs do not say whether the debt created by this "credit" thus obtained was ever paid by the corporation, or whether it still remains standing against the corporation.

And the plaintiffs state some matters which are perhaps pertinent to each of these three grounds, as the matters set forth in the part of the bill, which is as follows : "And your orators charge that they felt assured by the act of incorporation aforesaid, and the character of the associates aforesaid, that they possessed, at the time of their application for, and organization under the charter aforesaid, untrammelled by any claim or claims thereon, all the capital of lands and property set forth in said act of incorporation; and that your orators extended credit to them from the confidence they had; that it was the plain intent and meaning of their act of incorporation, that they did then, and should possess, all the property and means so represented to the Legislature, free of any liens thereon or of any debts due by them on account of the same."

The plaintiffs do not state in what the property, the capital of the corporation, consisted. They seem to proceed, however, upon the assumption that it consisted of the land, foundry, &c. aforesaid.

They do not state how the corporation acquired its title to this property; whether by deed from the joint stock company, or by the operation of the charter, or by some other mode; and, of course, therefore, they do not state how much the corporation paid for the property, or state whether the corporation was to have it at a specified price, absolutely, or at a specified price, with the understanding that the corporation was to pay the debts incurred by the joint stock company on

account of the property. From what they do state on this subject, they leave it to be inferred that the corporation obtained the property in some mode that imposed on it a liability to pay the debts which the joint stock company owed on account of the property. What they state is, that they supposed that the property, when it came to the hands of the corporation, was free from lien, free from debts—was untrammelled, &c. This is implicitly to say, that the property did not so come to the hands of the corporation, but that it came incumbered—came subject to lien—subject to debt, or at least, is to say, that by virtue of some understanding between the joint stock company and the corporation, or by virtue of the charter, the corporation was to pay the debts which the joint stock company had incurred in improving the property.

The prayer of the bill is, that the defendants may account to the plaintiffs for the $2.000 paid by the corporation to the defendants in re-imbursement of the $2.000 assessment; for the $4.000 paid by the corporation in discharge of the debts which the defendants owed to various persons as aforesaid; and for the $2.000 which the corporation had to advance to put the foundry in actual operation. This is the substance of the case of the plaintiffs. Is the case one that entitles the plaintiffs to the relief they pray for ?

And first, are they entitled to an account of the $2.000 paid by the corporation to the defendants, in satisfaction of the $2.000 owed by the joint stock company to the defendants for their advance of that sum to the joint stock company on the ten per cent. assessment made on them by that company ?

And the answer must be, that they are not, provided the corporation was bound to pay the $2.000 to the defendants, and the defendants were guilty of no fraud of any sort towards the plaintiffs, in respect to the obligation of the corporation to pay that sum to the defendants.

Now if the corporation took the property from the joint stock company on the terms imposed on it, whether by the charter or by an understanding with the corporation, that

the corporation was to pay the debts of the joint stock company incurred in improving the property, then the corporation was bound to pay the $2.000, for the joint stock company owed its members that sum for money advanced to it by its members, and applied by it in improving the property.

And we are bound to presume that the corporation did take the property on these terms.

We are bound to presume this from what the bill says, as well as from what it fails to say. The bill speaks of the property as being trammelled—being subject to lien—being subject to debts. This is what it says. It fails to say anything as to the particulars of the mode by which the corporation acquired title to the property from the joint stock company. It fails to say that the joint stock company did not require, as a condition of yielding to the corporation its place, as owner of the land, that the corporation should take the place with the burdens of the place, as well as with the benefits.

We are also, perhaps, bound to presume this from the character of the charter. The charter is such as, perhaps, to justify an inference, that it was the intention of the parties to it—the Legislature and the corporators—that it, by itself, should convert the joint stock company, with all its rights and all its liabilities, into the corporation. The preamble, especially, seems significant in this respect. See *Colquitt et al. vs. Howard*, (11 *Ga. R.* 562.)

The result is, that the corporation was bound to pay the $2.000 to the defendants.

Were the defendants guilty of any fraud, of any sort, towards the plaintiffs, in respect to the corporation's liability to pay the $2.000? Did the defendants *deceive* the plaintiffs in any way, in respect to the corporation's liability to pay the $2.000?

And this question resolves itself into this : did the defendants tell the plaintiffs, expressly or impliedly, that the corporation was not liable to pay the $2.000? There is no intimation in the bill, that the defendants *expressly* told the plaintiffs this—none that they *impliedly* told the plaintiffs

this ; i. e. none that they stood by seeing the plaintiffs giving credit to the corporation, on the faith that the corporation was not liable to pay the $2.000 ; and yet, failed to tell the plaintiffs that the corporation was liable to pay the $2.000. The bill does not say that the plaintiffs ever even made an inquiry of the defendants or of others, as to the liabilities of the corporation. It does not even say, that at the time when the plaintiffs were extending credit to the corporation, the defendants *knew* that the plaintiffs were doing so. What does the bill say? It says that the defendants, before they were incorporated, made a representation to the *Legislature* that amounted to a fraud on *them, the plaintiffs.* This representation I have quoted. It consists, simply, in what is contained in the preamble of the charter. And, as to all particulars about this representation, the bill is silent. It does not tell whether the representation was made by all the defendants in a body ; or by each defendant separately ; or by some acting for all ; or, whether it was made to the members of the Legislature severally ; or to the members as a legislative body ; or to some committee of the Legislature. And the representation, such as it is, was made, not to the plaintiffs, but in the language of the bill, to "the Legislature." A representation so made, must have been made to influence the action of the Legislature only ; at least, it could not have been made to influence the action of the plaintiffs, to induce the plaintiffs to credit the corporation for the sums they are now suing for ; because the representation was made long before the credit was given ; was made at a time when the persons making it could not foreknow whom the corporation, if created, would apply to for credit.

And the representation, considered as made to the Legislature, does not say that the capital of the corporation sought to be chartered, was to be of any specified value ; nor could the Legislature have understood that the capital was to be limited to this value or that ; for all that the charter says on the subject is, that the capital was not to exceed $600.000. That it might be any amount less, is the plain implication. The

representation does not tell the Legislature that the land, with the foundry, &c. upon it, freed from all liability to an-swer for debts contracted in repairing or improving the foun-dry, &c. was to be the capital. If the preamble, which em-bodies what the bill says was the representation, taken in connection with the rest of the charter, authorizes the infer-ence that it was the intention of the parties to the charter that the joint stock company should, by mere operation of the charter, be converted into the corporation, it certainly does not authorize the inference that the conversion was to take place with respect to rights, and not with respect to liabili-ties—with respect to what the joint stock company owned, and not with respect to what it owed. See *Colquitt et al. vs. Howard*, (11 *Ga. R.* 562.)

In short, it does not appear that the defendants ever told the plaintiffs that the $2.000 was not to be paid by the cor-poration, or ever did any thing from which a right resulted to the *plaintiffs*, to infer that the $2.000 was not to be paid by the corporation. And therefore, it does not appear that the defendants ever perpetrated any fraud on the plaintiffs, with respect to the corporation's liability to pay the $2.000; for such a fraud could be perpetrated in only those two ways.

Nearly everything that has been said about this assessment. affair may be said, *mutatis mutandis*, about the other affair, viz: the payment by the corporation of the debts of the joint stock company, to the amount of $4.000 or other large sum. And therefore, the bill does not make out a case of fraud against the defendant, as to that affair.

Nor need anything more be said on the third ground of the bill—the misrepresentation to the Legislature. Admit it to be true, that the foundry was not in operation, though the defendants stated that it was; yet, who can say that the Le-gislature would not equally have granted the charter, had the precise truth been told it with respect to the condition of the foundry ?

The Legislature has never complained of the misrepresen-tation, nor has the State. And if they do not complain, who

can complain ?   Certainly not these plaintiffs, for the misrepresentation was not made to *them ;* nor was it made to influence *their* conduct.

It is thus seen, that there is no equity in any of the grounds on which the plaintiffs rely.

This will also be seen, if the following be a true statement of the facts of the case, viz: the joint stock company bought the land, with the foundry, &c. for $20.000, as and for their capital—a capital to be rated at the value of $20.000.   They then converted it into a stock of two hundred shares, valued at $100 each; and therefore, at $20.000 in the whole.   They then borrowed from their members ten per cent. on their shares, making a sum equal to $2.000.   This sum they spent in improving the property.   They also went in debt, say $4.000, for further improving the property.   The property, with these sums spent upon it, became of the value of $26.000 ; that is to say, became worth $6.000 more than it was worth when they made it their capital.   They then paid their members tho ten per cent. which those members had advanced to them, not by parting with any part of the property thus improved, but by money raised by the sale of twenty new shares of stock which they created.   They then accepted the charter—a charter which probably contemplated that the capital stock of the corporation was, at the beginning, to be precisely the same as the original capital stock of the joint stock company ; that is to say, was to be the land, &c. valued at $20.000, in two hundred shares of a hundred dollars each. The result was, that the corporation, at the moment of organization, had a capital of $26.000, instead of the capital the Legislature thought they would begin with, viz: $20.-000.   But upon this there was a charge of the $4.000 spent in further improving the land, &c. ; so that the clear capital was only $22.000.   At the moment of organization, then, the corporation had a capital of $22.000, and enough besides to pay the charge upon that capital ; and therefore, had $2.000 *more* than the Legislature expected them to have.   Afterwards, the corporation paid the charge upon the capital, viz:

the $4.000. Now if these are the facts of the case, is it possible to say that the corporation was guilty of any thing wrong, whether as it respects the State or as it respects these creditors? Could it harm either, that the capital of the corporation was $2.000 more than the Legislature expected it to be? I think not.

And there is much in the bill going to show that these are the facts of the case.

There is no telling, however, what another amendment may do. These plaintiffs seem to feel at liberty to vary their facts to suit the decisions of this Court.

The judgment of the Court below is affirmed.